Hat, Judge,
delivered the opinion of the court:
This is a suit brought by the executor of the estate of William Weighel, deceased, for the sum of $52,327.60. On the 17th day of January, 1895, William Weighel entered into a contract with the Postmaster General of the United States to perform covered regulation mail messenger, transfer, and mail station service in Chicago, Ill., on mail route No. 235001 for the period from the 1st day of July, 1895, to the 30th day of1 June, 1899. Among other things the contract provided: “ To carry said mail, using therefor wagons of the kind hereinafter described in sufficient number to *84 transpox-t the whole of said mail, whatever may be its size, weight, or increase during the term, of this contract * * * and so to carry until said schedule is altered by the authority of the Postmaster General ” * * * and “ to perform all new or additional or changed covered regulation Avagon mail messenger, transfer, and mail station service that the Postmaster General may order at the city of Chicago, Ill., during the contract term, without additional compensation, whether caused by change of location of post office, stations, landing, or the establishment of others than those existing at the date hereof, or rendered necessary, in the judgment of the Postmaster General, for any cause, and to furnish such advance wagons from time to time for special or advance trips as the Postmaster General may require, as a part of such new or additional service.” And the contract further provided: “ It is hereby stipulated and agreed by the said contractor and his sureties that the Postmaster General may change the schedule and termini of the route, vary the routes, increase, decrease, or extend the service thereon, without change of pay; and that the Postmaster General may discontinue the entire service whenever the public interest, in his judgment, shall require such discontinuance.”
At the time the contractor Weighel bid on this route and entered into the contract with the Government, no mail service in the city of Chicago was being performed to and from street cars by contractors who Avere performing the same mail service which was bid for by the said contractor, nor did the proposal of the defendants for mail service on this route mention service to and from street cars, although the proposal to bidders published by the defendants for the period beginning July 1, 1899, did mention specifically electric and cable cars. The aforesaid contractor, through his agent, was informed by the postmaster of Chicago, who was authorized by the Postmaster General of the United States to give information to bidders, that the bidder obtaining the contract for the performance of mail service on route 235001 for the period set out in the findings would not be required to perform mail service to and from street cars.
*85 During the period covered by the contract, the subcontractor performed the service required by the contract, and all new and additional service of the kind and character referred to in the advertisement and the contract for this service the subcontractor has been paid.
Under orders issued by the Postmaster General, which orders are set out in the findings, the subcontractor was required to perform mail service to and from street cars in the city of Chicago. As a result of these orders the subcontractor had to make to and from street cars 523,276 trips, and was obliged to employ 24 men, 4 double vans, and • 7 single wagons to perform the service, which had been previously performed by 4 drivers and 4 single wagons, all of which greatly increased the expense of the service and imposed upon him duties and undertakings which were not contemplated in the contract. The value of the service rendered by the subcontractor in the making of the trips imposed upon him by the orders of the Postmaster General to and from street cars was $52,327.60, no part of which amount has been paid to the subcontractor nor to anyone else. This service was performed under protest, and the contractor notified the defendants that compensation therefor would be demanded. The Government contends that the Postmaster General under the authority conferred upon him by the contract in this case had a right to require the contractor to render new or additional mail messenger or transfer service, and that the trips to and from street cars was such new and additional service as was provided for in the contract. We do not think so. The service required was of an entirely different nature from that described in the contract, imposed upon the contractor very great burdens, and involved him in great expense which he could not have foreseen or guarded against when he entered into the contract.
We think this case is governed by the principles laid down by the Supreme Court of the United States in the case of United States v. Utah, Nevada & California Stage Co., 199 U. S., 414, 422, 423, and if the plaintiff’s decedent, in this case had performed the services for which he brings suit, *86 we would not hesitate to render a judgment in his favor. But it appears from the evidence in this case that Weighel, the contractor, on February 6, 1895, sublet his contract to one Travis, who agreed to perform all the service which was required of Weighel by his contract with the Government. Travis complied with the terms of his subcontract; he also performed all the service under Weighel’s contract with the department, and was recognized by the department as subcontractor. Weighel had no further interest in the contract, except that he paid over to Travis the sum of $72,400 per annum, which the Government paid him as the original contractor. The trips which were made to and from the street cars were made by Travis, the expenses imposed by reason of these trips were paid by Travis; all this extra service, which is the subject of this suit, was performed by Travis, the subcontractor. It was not claimed by Weighel, nor does his personal representative claim, that Weighel performed this extra service.
It is unfortunate that Travis did not sue in his own name, or that Weighel did not sue for the benefit of Travis. After the suit brought by Weighel had been pending in this court for over six years, it seems to have occurred to Travis that Weighel did not have a cause of action, and he therefore undertook to sue in his own name, but it was held that he was too late; that he was barred by the statute of limitations, and his suit had to be dismissed. Had he brought his suit in time, or if Weighel had sued for his benefit in the first place, it is difficult to perceive how he could have been defeated. As the matter stands, it clearly appears that Weighel has no interest in the subject matter of this suit; therefore his executor can not maintain it, and his petition must be dismissed.
Graham, Judge, DowNet, Judge, Booth, Judge, and Campbell, Chief Justice, concur.